UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                Civil No.

vs.                                   Honorable:
                                   Magistrate Judge:

TWENTY-FIVE THOUSAND
DOLLARS ($25,000.00) IN
U.S. CURRENCY,

              Defendant *In Rem*.

_____ /

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through

BARBARA L. McQUADE, United States Attorney for the Eastern District of

Michigan, and ADRIANA DYDELL, Assistant United States Attorney, and states

upon information and belief in support of this Complaint for Forfeiture as follows:

1.     This is an *in rem* civil forfeiture action pursuant to Title 21, United

States Code, Section 881(a)(6).

2.     This Court has original jurisdiction over this proceeding pursuant to

Title 28, United States Code, Section 1345 as this action is being commenced by

the United States of America as Plaintiff.

3.     This Court has jurisdiction over this forfeiture action, pursuant to Title 28, United States Code, Section 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court pursuant to Title 28, United States Code, Section 1391(b)(2) as a substantial part of the events or omissions giving rise to the United States's claims occurred in the Eastern District of Michigan.

5.     Venue is also proper before this Court pursuant to Title 28, United States Code, Sections 1395 (a), (b) as the action accrued and the Defendant *In Rem* was found and seized in the Eastern District of Michigan.

## DEFENDANT *IN REM*

6.     The Defendant *In Rem* consists of Twenty-Five Thousand Dollars ($25,000.00) in U.S. Currency (hereinafter referred to as the "Defendant *In Rem*"). Agents/Task Force Officers (referred to generally as "Agents") of the Drug Enforcement Administration ("DEA") seized the Defendant *In Rem* on or around March 12, 2014 at the Detroit Metropolitan Airport in Romulus, Michigan.

## STATUTORY BASIS FOR CIVIL FORFEITURE

7.     Title 21, United States Code, Section 881 governs the civil forfeiture of property which constitutes or is derived from the proceeds of controlled substance crimes, or which was used to facilitate such crimes:

The following shall be subject to forfeiture to the United States and no property right shall exist in them....[a]ll moneys, negotiable instruments,

2

securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

## **FACTUAL BASIS IN SUPPORT OF FORFEITURE**

8.     The Defendant *In Rem* is forfeitable to the United States of America pursuant to Title 21, United States Code, Section 881(a)(6).  Evidence supporting this forfeiture includes, but is not limited to, the following:

a.     On or around March 12, 2014, DEA Agents received information regarding Christelle Tillerson ("TILLERSON").  Agents learned that TILLERSON was traveling from Detroit, Michigan to Los Angeles, California via a connection at O'Hare International Airport in Chicago, Illinois.

b.     While TILLERSON was waiting to board her flight in Detroit, Agents initiated a consensual police/citizen contact with TILLERSON.  The Agents were dressed in plain clothes with no visible signs of any weapons, identified themselves as law enforcement, and showed TILLERSON their credentials.  When they approached TILLERSON, the Agents stood off to TILLERSON's side so as to not block her freedom of movement.  TILLERSON agreed to speak to Agents regarding her travel plans.

3

c.     TILLERSON showed Agents her boarding pass and Michigan driver's license.  TILLERSON told Agents that she was traveling to Los Angeles to purchase a semi-tractor, and that she had purchased a one-way ticket to Los Angeles that day (March 12, 2014).

d.     When Agents asked TILLERSON if she was carrying any contraband or large sums of money, TILLERSON responded that she had "about $20,000."  When Agents asked where the currency was located, TILLERSON produced a blank business check from her purse with the account name "Ten Investment Group."  TILLERSON told Agents that the Ten Investment Group bank account contained $20,000.

e.     When asked how much currency she had in her possession, TILLERSON stated that she had $20,000 in her checked luggage.  Agents asked TILLERSON for permission to search her checked luggage, purse, and carry-on bag.  TILLERSON consented.  While searching TILLERSON's checked luggage, Agents discovered a large amount of rubber banded currency located in a pair of boots and socks within the checked luggage.  Agents observed that the currency consisted primarily of $20.00 bills and appeared worn from street use.  Based on training and experience, Agents know that smaller denominations of currency and currency worn from street use is consistent with drug trafficking.  Agents later

4

determined that the currency found in TILLERSON's checked luggage totaled $25,000. This currency constitutes the Defendant *In Rem*.

f.      Agents asked TILLERSON if she had ever been arrested or had any contact with law enforcement. TILLERSON stated that she had spent time in jail on a marijuana charge.

g.      Agents informed TILLERSON that it was the responsibility of law enforcement to investigate suspected drug traffickers and money couriers traveling with large amounts of currency through Detroit transportation facilities. Agents asked TILLERSON if she would be willing to go to an office located within the airport terminal to talk to them about the currency found in her luggage. Agents explained to TILLERSON that she was not under arrest. TILLERSON agreed to continue speaking with Agents and voluntarily went to the airport terminal office.

h.      At the office, Agents asked TILLERSON questions pertaining to her travel, the Defendant *In Rem*, and her work history. When asked why she was traveling to Los Angeles with so much currency, TILLERSON told Agents that she was planning on starting a trucking company and that she was traveling to Los Angeles to meet with a particular semi-tractor dealer. TILLERSON also told agents that she would receive a discount if she purchased a semi-tractor with cash.

5

i.      TILLERSON told Agents that the trucking company was going to be financed through Ten Investment Group.  Agents noted that the address on the blank Ten Investment Group check that TILLERSON had in her purse was the same as TILLERSON's home address in Detroit, Michigan.  When asked how much money was currently in the Ten Investment Group bank account, TILLERSON stated that she did not know, but she knew that the account contained at least $20,000.  TILLERSON also told Agents that she had a personal checking account at Woodforest National located in Ohio.  She stated that the balance of that account was approximately $173.

j.      A review of the company Ten Investment Group, LLC on the State of Michigan website listed the company as active, but not in good standing as of February 24, 2014.  TILLERSON's fiancé, Thomas Nelson (hereinafter "NELSON") was listed as the resident agent of Ten Investment Group.  According to paperwork filed with the State of Michigan, Ten Investment Group engaged in real estate and business investments.

k.      TILLERSON then told Agents that NELSON was going to be her partner in the previously described trucking company.  TILLERSON stated that NELSON was currently employed with the U.S. Postal Service, and that NELSON withdrew the Defendant *In Rem* from his 401k sometime in December

6

2013. TILLERSON stated that after withdrawing the funds from his 401k, NELSON kept the funds at their home.

l.      TILLERSON told Agents that she had filed for bankruptcy in 2013, and that she anticipated the bankruptcy would be final within the next couple of weeks. Subsequent to the interview, investigation revealed that the final decree date for the bankruptcy was on or about March 10, 2014.

m.      TILLERSON told Agents that she had not filed income taxes since 2011. TILLERSON stated that she did not file income taxes because she did not receive an income during 2013. However, TILLERSON did tell Agents that she was the owner/operator of a truck which primarily shipped auto parts to and from the Detroit metro area from approximately March 2013 through January 2014. According to TILLERSON, the truck operated under the shipper ID "MN Express" and was based in Michigan. TILLERSON told Agents that she did not receive a reportable income during the time frame that she drove the MN Express truck.

n.      When asked by agents if the Defendant *In Rem* had been in contact with any controlled substance(s) or person(s) who might have used a controlled substance, TILLERSON said no.

o. A canine trained to detect the presence of narcotics conducted a sniff of the Defendant *In Rem*. The canine positively alerted to the presence of a controlled substance emitting from the Defendant *In Rem*.

p. Based upon probable cause that the Defendant *In Rem* was either derived from the sale of controlled substances and/or intended to be used to purchase controlled substances, Agents seized the Defendant *In Rem*.

q. After Agents seized the Defendant *In Rem*, Agents made contact with TILLERSON's bankruptcy attorney. The bankruptcy attorney told Agents that based upon TILLERSON's testimony regarding her financial situation at a bankruptcy hearing, TILLERSON did not have the means to support having anywhere near $20,000 either in her possession or in a bank account.

r. TILLERSON has a criminal history that includes multiple prior arrests, including one for dangerous drugs which resulted in a sentence of 30 months.

## CLAIM

9. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 8, and the subparagraphs thereunder.

10. The Defendant *In Rem* is forfeitable to the United States of America pursuant to Title 21, United States Code, Section 881(a)(6) as property furnished, or intended to be furnished, in exchange for a controlled substance or listed

8

chemical, and/or as proceeds traceable to such an exchange, and/or as property used or intended to be used to facilitate a violation of Title 21, United States Code, Section 841(a).

## CONCLUSION AND RELIEF

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the Defendant *In Rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendant *In Rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

ADRIANA DYDELL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9125
adriana.dydell@usdoj.gov
(CA. Bar No. 239516)

Dated: July 29, 2014

9

## VERIFICATION

I, Michael Taylor, state that I am a Task Force Officer of the United States Drug Enforcement Administration ("DEA").  I have read the foregoing Complaint for Forfeiture, and declare under penalty of perjury that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

_____

Michael Taylor
DEA Task Force Officer

Dated: July 29, 2014

10