UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                              Case No; 14-12960
                                                  Honorable Victoria A. Roberts

TWENTY-FIVE THOUSAND
DOLLARS ($25,000.00) IN
U.S. CURRENCY,

    Defendant.
_____/

**ORDER GRANTING MOTION TO SET ASIDE THE DEFAULT (DOC. #13)
AND DENYING MOTION FOR DEFAULT JUDGMENT (DOC. #11)**

**I.    INTRODUCTION**

On December 30, 2014 the Government filed a Motion for Default Judgment based on the Default entered by the Clerk of the Court on December 15, 2014. On January 9, 2015 Claimants Thomas E. Nelson, Sr. and Christelle Tillerson filed a Motion to Set Aside the Entry of Default under F.R.C.P. 55(c).

The issue presented is whether "good cause" exists under F.R.C.P. 55 (c) for the Court to set aside the default, or, in the alternative, to grant the Government's Motion for an Entry of Default Judgment.

The Court finds that good cause does exist, **GRANTS** the Motion to set aside the Default, and **DENIES** the Motion for Default Judgment.

**II.    BACKGROUND AND FACTUAL HISTORY**

On March 12, 2014 DEA agents received information related to Claimant

Christelle Tillerson, and initiated a "consensual police/citizen encounter" while Ms. Tillerson waited for a flight to Los Angeles at Detroit Metro Airport. Ms. Tillerson agreed to speak to the agents, and told the agents she was traveling to Los Angeles to purchase a semi tractor. Tillerson told agents that she had "about $20,000" in her checked luggage and gave permission for them to search her luggage. Agents found rubber-banded currency showing signs of "street use," which was later calculated at $25,000 and constitutes the seized money. Agents explained to Tillerson that she was not under arrest but asked Tillerson if she would be willing to go to an office to speak to them about the money in her luggage. Tillerson stated that she was going to purchase a semi tractor and that she would get a discount if she paid cash. She said she was purchasing this truck for "Ten Investment Group, LLC" which she ran with her fiancé Thomas Nelson, who is listed as the registered agent for Ten Investment Group. Tillerson told agents that Nelson worked for the United States Postal Service and he withdrew the money from his 401k sometime in December 2013. Tillerson was asked if she or the money had been in contact with any controlled substances and Tillerson said no. However, a drug dog gave a positive response when near it.

Agents believed they had probable cause that the money was either derived from the sale of drugs or was intended to purchase drugs; they believed they had authority to seize the money under 21 U.S.C. § 881(a)(6).

Notice of seizure was published on April 22, 2014 by the DEA. On May 1 2014, the attorney for Mr. Nelson, Mr. Goldberg, sent a claim for the money to the forfeiture division of the DEA, along with a letter asking that any further filings be sent to him. On July 29, the Government filed a Complaint for the forfeiture of the money and filed a

Warrant of Arrest and Notice In Rem for the money on July 30. On July 31, the Government sent service to Tillerson, Nelson and Mr. Goldberg by certified and regular mail. The Government placed a notice about the money on www.forfeiture.gov for thirty consecutive days starting August 1, 2014. On September 5, after the expiration of the time to file a claim, the Government sent a letter to Mr. Goldberg informing him of this lapse. On September 9, Mr. Goldberg called Assistant United States Attorney Dydell, stating that Nelson and Tillerson had stopped paying him, and stopped communicating with him after he told Tillerson of the outstanding debt to him and the forfeiture Complaint filed.

The certified mail sent to both Tillerson and Nelson was returned unclaimed. The Government tried to serve them again by certified and regular mail on October 27 and on November 10. All certified mailings were returned 'unclaimed' or 'return to sender', but none of the regular mail was returned. On December 15, the Government obtained a Default by the Clerk of the Court, and on December 30, the Government moved for Default Judgment based on the Default. On January 9, 2015 the Claimants, through new counsel, moved to set aside the default under F.R.C.P. 55(c).

### III. ANALYSIS

#### A. Standard of Review

The standard for setting aside a default is provided in F.R.C.P. 55(c):

> The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

In federal court, there is a "strong preference for trial on the merits" (*INVST Financial*

*Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 397 (6th Cir. 1987). Accordingly, when determining whether to set aside an entry of default, courts should take all disputed facts in the light most favorable to the defaulted party. *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845-846 (6th Cir. 1983), quoting *Tozer v. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951).

There are three factors the court should look to in determining whether "good cause" exists: (1) Whether the plaintiff will be prejudiced; (2) Whether the defendant has a meritorious defense; and (3) Whether culpable conduct of the defendant led to the default." *United Coin, supra.*

The facts support setting aside this default.

### B. Prejudice to the Plaintiff

Prejudice to the plaintiff must be examined prospectively. Any prejudice to the plaintiff must be as a result of setting aside the default, and not as a result of any action or inaction on the part of the Claimant before setting aside the default. *Dassault Systemmes, SA., v. Childress*, 663 F.3d 832 (6th Cir. 2011) citing *Berthelsen v. Kane*, 907 F.2d 617 at 620, 621 (6th Cir.1990)). The plaintiff must also show that the delay will result in actual prejudice in the form of "loss of evidence, [create] increased difficulties of discovery, or provide greater opportunities for fraud and collusion." *INVST, supra* [*citations omitted*].

The Government points to efforts to provide service to Mr. Nelson and Ms. Tillerson as proof of prejudice, but this prejudice is retrospective, rather than prospective as required by *Dassault*, supra. The Government claims that the delay imposed by setting aside the entry of default would prejudice it, but mere delay is not

4

sufficient prejudice to warrant denial of a motion to set aside a default. *United Coin, supra at 845.* The Government, which could have filed for default as early as September 30, 2014, did not do so until December 15, 2014. The Government cannot now complain of prejudice resulting from the one month delay between the entry of default and the Claimants' Motion to Set Aside the Default. This delay is far less than the delay by the Government in seeking a Default, and is less than the amount of time between the seizure of the money and the filing of the warrant for its arrest.

The Government next alleges that it will be prejudiced in the form of bad precedent, which will "encourage parties to engage in delaying tactics or act in bad faith" (Opp'n, Dkt. 19 p. 16). The Sixth Circuit addressed this argument directly in *U.S. v. $22,050.00 U.S. Currency*:

> "The government also argues that setting aside default here would create bad precedent that would "undermine" the entire civil forfeiture system, leading to all potential claimants and their attorneys ignoring properly served forfeiture claims. Chicken Little would be proud of this logic. Our precedent for setting aside default has been around for quite a while, and applying precedent does not somehow create bad precedent" 595 F.3d at 325 (6th Cir. 2010)

The Government fails to allege substantial prejudice, and asserts only that setting aside the default would be "manifestly unfair." This is insufficient to satisfy the prejudice prong. Accordingly, this factor favors the granting of the Claimants' Motion to Set Aside the Entry of Default.

### C. Whether the Claimants have a Meritorious Defense

#### ii. Standard of Review

In evaluating whether to grant the Claimants' Motion to set aside the Entry of Default, the Court must next examine whether the Claimants have a meritorious

defense. In evaluating the merits of a defense, the Court considers whether:

> "the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand; the showing should underscore the potential injustice of allowing the case to be disposed of by default." (10 A. Wright, A. Miller, M. Kane, Federal Practice and Procedure, §2697).

A meritorious defense need not be one that is likely to succeed. *United Coin supra at 845* quoting *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F2.d at 734 "[l]ikelihood of success is not the measure." Courts have previously not established a uniform standard for what is required for a defendant/claimant to show a meritorious defense. Some courts require the pleading of specific facts (See: *Franchise Holding II, LLC. v. Huntington Resturaunts Group,Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) holding that a defendant must plead specific facts which would constitute a defense); others simply require that a defendant plead more than "bald allegation[s]... without the support of facts" *Stephanson v. El-Batrawi*, 524 F.3d 907 (8th Cir. 2008) quoting *Fink v. Swisshelm,* 182 F.R.D. 630, 632 (D.Kan. 1998). In this circuit, showing a defense which would be "good at law" has been deemed to be sufficient to set aside an entry of default.

### ii.    Defenses Asserted by Claimants

The Claimants' Motion to Set Aside the Default contends that the funds constituting the money were derived from a legitimate source: Mr. Nelson's 401K. To support this allegation, the Claimants attach copies of Mr. Nelson's bank records indicating a withdrawal of $17,500 between 12-9-14 and 12-10-14. Claimants say that this withdrawal makes up the bulk of the money seized.

The possibility that the funds were withdrawn from a legitimate source has been

contemplated by courts in the past: "One might ask: Did he recently withdraw this money from his bank account?. . . Were these profits from legitimate earnings? An affirmative answer to any of the above questions might raise a meritorious defense." *U.S. v. $55,518.05* 728 F.2d 192 (3d Cir. 1984). Unlike this hypothetical situation contemplated by the Third Circuit, the withdrawal that the Claimants assert constitutes the seized money was withdrawn from an account three months before the seizure. However, the test is not whether a particular defense will succeed at trial but whether the defense is good at law. The Claimants' assertion that the funds seized by the Government were derived from a legitimate source would constitute a meritorious defense to forfeiture by the Government.

The Claimants assert various other defenses, including that the "search and seizure of [c]laimant Tillerson and the *in rem* Defendant on 3/12/2014 was unreasonable and unlawful pursuant to the protection of the U.S. Const., Am. IV and V.". This assertion has no factual support. The Claimants do not allege facts to dispute that the interactions between Ms. Tillerson and law enforcement were consensual, as the Government alleges in the Complaint for forfeiture.

A consensual search is not subject to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973) [citations omitted]. Since the Government's Complaint alleges that the search of Ms. Tillerson was consensual and the Claimants do not plead facts to the contrary, the illegality of the search cannot be considered a meritorious defense.

The Claimants' Motion to Set Aside the Default also alleges that Ms. Tillerson was "interogat[ed] in violation [of] Tillerson's Miranda rights." This Court need not

address this purported defense; *Miranda* only applies in criminal prosecutions (*Miranda v. Arizona*, 384 U.S. 436, 438 (1966)) and cannot be used in a civil context. In addition, the protections of Miranda do not apply to "[v]olunteered statements," *Id* at 478, and Claimants have not stated that Ms. Tillerson's comments to agents were involuntary.

### D. Culpability of the Claimants

The last factor the court considers in deciding whether to set aside the entry of default is the culpability of the Claimants in allowing the default to enter. This factor is the least important of the three (See: *U.S. v. $22,050.00 U.S. Currency* supra at 326), and further, "mere negligence or failure to act reasonably is not enough to sustain a default" *Id.* at 327. In order for a default to be sustained, a claimant/defendant must display "either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings" *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996). Claimants offer two justifications that the they believe excuse the Default.

### ii. Notice of the Action

Civil forfeiture proceedings are governed by Rule G of the Supplemental Rules for Admirality and Maritime Claims and Civil Forfeiture Actions to the Federal Rules of Civil Procedure. Rule G requires that the Government obtain an arrest warrant for any non-real property within the Government's control (F.R.C.P. Supp. Rule G(3)(b)(1)) which was filed August 1, 2014 with the court. Next, the government must provide direct notice to any known potential claimants under Supp. Rule (G)(4)(b)(I) which must be reasonably calculated to reach the potential claimant (Supp. Rule G(4)(b)(iii)(A)). Notice

may be sent to a potential Claimant, or any attorney representing the Claimant (Supp. Rule G(4)(b)(iii)(B)) and notice may be sent to the address given by the Claimant to the agency that seized the property (Supp. Rule G(4)(b)(iii)(E)).

The Government made many efforts to provide notice to Ms. Tillerson and Mr. Nelson. It provided notice via regular and certified mail on July 31, October 27, and November 10 to the address Tillerson gave to the DEA. All of the certified mailings were returned unclaimed, but the regular mailings were not returned. The Government also gave actual service to Mr. Goldberg, the Claimants' attorney in the administrative forfeiture proceeding.

The Government's service obligation is satisfied by regular mail under most circumstances. *Armendariz-Mata v. U.S. Dept. Of Justice, Drug Enforcement Admin.*, 82 F.2d 679, 683 (5th Cir. 1996). Tillerson and Nelson claim that service on them was provided to "bad addresses," but the Government correctly contends that "nowhere in the Motion do Nelson and Tillerson assert that they do not reside at Braile Street or that they did not receive the mail sent to the Braile Street address." The Government argues that this shows that the Claimants were willful in their default; it says: "it appears that Nelson and Tillerson evaded service of the Certified Mail served by the United States."

The Government urges the Court to consider the failure of Claimants to receive or accept the certified mail sent to them as a willful evasion of service. However, this court must view disputed facts in the light most favorable to the defaulted party. *United Coin* supra. It is plausible that the Claimants did not receive the certified mailings. It is also plausible that their failure to respond to notices that they had certified mail waiting

9

for them was wilful or neglectful. This factor does not weigh heavily in either direction.

### iii. Attorney Negligence

In explaining why they did not respond, the Claimants allege that their previous attorney, Mr. Goldberg, "...neglected the matter, resulting in the entered Default. Throughout, attorney Goldberg refused to return calls from [the] claimants." The Claimants' allegations of attorney negligence are directly contradicted by the Government, which purports to have spoken to Mr. Goldberg on September 9, 2014 and again on or around January 22, 2015. The conversations between the Government and Mr. Goldberg indicate that Mr. Goldberg was not paid in full by the Claimants, that he told them he could not proceed until he was paid, and that after informing the Claimants of this, Mr. Goldberg could not get in contact with them.

Although Claimants are entitled to have disputed facts viewed in the light most favorable to them even if, as they claim, they "assumed the matter was being handled beyond the administrative claim," they cannot be excused on the basis of attorney neglect:

> "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's un-excused conduct imposes an unjust penalty on the client... he cannot now avoid the consequences of the acts or omissions by his freely selected agent" *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-634 (1962).

The Claimants do not avoid culpability for this reason.

### E. The Court Grants the Motion to Set Aside the Entry of Default

In balancing the factors to set aside an entry of default, the court looks at the first

two factors more closely than the third; it may be an abuse of discretion for a court to deny the motion in the absence of a willful or reckless failure by the defendant/claimant to appear. *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1990).

The Claimants have a potentially meritorious defense; there is no evidence that setting aside the entry of default would prejudice the Government; and, there is no overwhelming evidence that Claimants were willful or reckless rather than negligent in allowing the default to enter. While not laudable by any means, the actions of the Claimants also do not rise to the high degree of irreverence demanded by precedent in this circuit.

## IV.  CONCLUSION

The Court **GRANTS** the Claimants' Motion to Set Aside the Entry of Default and **DENIES** the Motion for Default Judgment.

**IT IS ORDERED**.

 /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: April 2, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 2, 2015.

s/Linda Vertriest
Deputy Clerk

11